In re **ROXY REAL ESTATE CO., INC., Debtor.**

**Bankruptcy No. 93–15811F.**

United States Bankruptcy Court, E.D. Pennsylvania.

Dec. 8, 1993.

Douglas H. Weiss, Weiss & Mercer, P.C., Philadelphia, PA, for creditor, Samuel Rosenberg.

Matthew Krekstein, Abraham, Pressman & Bauer, P.C., Philadelphia, PA, for debtor.

## MEMORANDUM

BRUCE I. FOX, Bankruptcy Judge:

On October 4, 1993, this debtor filed the instant chapter 11 case. Samuel Rosenberg, who holds a first mortgage on the debtor's sole asset, has now moved to dismiss this case alleging that it was filed in bad faith. Alternatively, Mr. Rosenberg seeks relief from the automatic stay.

After a hearing, the following facts were proven.

### I.

The debtor is a corporation whose sole asset is the real estate located at 602–06 South 2nd Street, Philadelphia, Pennsylvania. Samuel Rosenberg holds a first mortgage on the realty; the debtor fell into default in mortgage payments in 1991. Just prior to a scheduled foreclosure sale, the debtor filed its first chapter 11 bankruptcy petition on May 1, 1992. That case was docketed at Bankr. No. 92–12684F.

Rosenberg thereafter sought relief from the automatic stay. That motion was settled by an agreement reached by those two parties. Ex. J–2 ("Stipulation in Settlement of Motion of Samuel Rosenberg for Relief From the Automatic Stay ..."). The agreement explains that Rosenberg entered into a mortgage agreement with the debtor in August, 1987 in the principal amount of $750,000.00. A foreclosure action was commenced in state

court in October 1991, with judgment entered in the mortgagee's favor in January 1992. As of May 1, 1992, the stipulation states that Rosenberg was owed $812,477.50.

In relevant part, the debtor promised under this agreement to pay to Rosenberg $4,029.50 on December 1, 1992, plus $8,059.00 beginning December 15, 1992 and every thirty days thereafter until the mortgage debt was repaid, with contract interest. The debtor had the right to sell the realty so long as Rosenberg would be repaid in full from the purchase price. In return for this agreement, Rosenberg promised to support the debtor's chapter 11 reorganization plan.

The settlement agreement also stated that if Rosenberg was not repaid monthly, as promised, the mortgagee was "entitled to immediate relief from the automatic stay, and Rosenberg shall immediately be permitted and authorized to exercise any and all of his State Court rights and remedies, including but not limited to exposing the Second Street Property to Sheriff's Sale." Ex. J–2, at 7.

Finally, the settlement agreement contained this provision:

> The Debtor shall not modify, attempt to modify or cause to be modified the terms of this Agreement or any Order approving the Agreement or the agreements or documents referenced herein, whether through the proposal or promulgation of a Plan or [sic] Reorganization, or by requesting, moving for or acquiescing in the entry of any stipulation or order *in this or any successor bankruptcy proceeding.*

Ex. J–2, at 8 (emphasis added). This stipulation was approved by court order dated January 21, 1993. Ex. J–1.

The source of payments to be made under this agreement is not stated in the stipulation. However, the testimony offered in connection with the instant motion provided this background.

The debtor's realty had been rented in the past to a corporation known as 602–06 South Street Enterprises, Inc. ("Enterprises") which operated a restaurant/bar on the leasehold. The debtor's two present shareholders (who are related by marriage) purchased their interests in the debtor and in Enterprises in 1989. Thereafter the two shareholders took turns operating the restaurant/bar, each without success.

In 1991, the shareholders of Enterprises decided to cease operations and the restaurant/bar closed. Since the rental payments from this tenant were the only source of income for the debtor, it was thereafter unable to tender mortgage payments to Rosenberg.

In the fall of 1992, the debtor located another (unrelated) corporate entity to lease space from the debtor and operate a different restaurant/bar. (In all likelihood, this new tenant purchased certain assets from Enterprises, including its liquor license.) The new tenant (known to the parties as "Tango and Cash") agreed to pay $16,000.00 per month in rent. However, this new tenant made only four monthly payments. It too has ceased to operate, and the debtor has regained possession of the realty.[1]

On March 1, 1993 (before Tango and Cash closed their operations), the debtor's proposed second amended plan of reorganization was confirmed. Ex. J–3. Under the terms of the plan "Rosenberg will receive monthly payments pursuant to a Stipulation filed with the Court or to be filed with the Court." Ex. J–4 at 7.

Although Rosenberg and the debtor dispute the amount of money paid to the mortgagee pursuant to the parties' stipulation (and the confirmed plan), there is no dispute that the debtor has materially defaulted in its postconfirmation payments to Rosenberg. This default terminated any bankruptcy created stay as to this mortgagee. Accordingly, Rosenberg relisted the realty for foreclosure sale to occur on October 4, 1993. However, on that date, just prior to sheriff sale, the debtor filed its second chapter 11 case giving rise to the automatic stay and thereby staying the sale.

The debtor testified that it has already filed a proposed reorganization plan in this

---

1. When Tango and Cash failed, the debtor found another operator for the business but this new operator proved unsuccessful in a matter of weeks.

second case. Although neither party wished to offer that proposed plan in evidence, the testimony makes clear that the debtor intends to lease the realty to still another corporation which will operate a new restaurant/bar at the leasehold. No lease has yet been signed, because the proposed tenant will not agree to a lease until it is assured of obtaining a liquor license at that location. (The debtor hopes that the license issue will be resolved shortly, but obviously that is not assured.)

The debtor believes this new tenant prospect is highly experienced and qualified to operate a restaurant/bar. Its proposed new plan calls for payments to all creditors, including Rosenberg, from rent payments (the debtor projects in the amount of $16,000.00 per month) from this prospective tenant.

Finally, the debtor has made various payments (but not payment in full) to its creditors under the terms of its earlier confirmed plan. The parties have agreed that earlier plan has been "substantially consummated" within the meaning of section 1101(2) of the Code. Indeed, the debtor urges this court to enter a final decree in its 1992 bankruptcy case, pursuant to Fed.R.Bankr.P. 3022. They also agreed that this substantially consummated confirmed plan implicitly incorporated the terms of the settlement agreement between the debtor and Rosenberg.

## II.

The principal issue posed by Rosenberg is whether the debtor's second chapter 11 filing should be dismissed due to a lack of good faith. Dismissal of a chapter 11 bankruptcy filing is based upon 11 U.S.C. § 1112(b).

Most courts have recognized that implicit in the Bankruptcy Code, probably within 11 U.S.C. § 1112, is the requirement that every chapter 11 bankruptcy petition be filed in "good faith". See, e.g., In re Klein, 100 B.R. 1004 (S.D.Ill.1989); In re Clinton Centrifuge, Inc., 72 B.R. 900 (Bankr.E.D.Pa. 1987). Conversely, if a petition is filed in "bad faith", it may be dismissed for "cause" under section 1112(b). See Carolin Corp. v. Miller, 886 F.2d 693 (4th Cir.1989); In re

Natural Land Corp., 825 F.2d 296 (11th Cir. 1987).

The Third Circuit Court of Appeals addressed the issue of bad faith In re Brown, 951 F.2d 564 (3d Cir.1991). Without elaborate discussion, the Third Circuit found that section 1112(b) contained an implicit good faith filing requirement and remanded the question of bad faith in that particular case to the bankruptcy court for consideration. Id.

Courts have defined the issue of good faith (or its converse—bad faith) in different ways. A thoughtful approach to this issue was articulated in Carolin Corp. v. Miller. Essentially, the Fourth Circuit held that a chapter 11 plan is not filed in good faith when, considering the question from an objective and subjective point of view, there is no likelihood that the debtor can reorganize under chapter 11. Id. Accord, e.g., Matter of Love, 957 F.2d 1350 (7th Cir.1992); Matter of Cohoes Indus. Terminal, Inc., 931 F.2d 222 (2d Cir. 1991).

Good faith involves, to some extent, the motives of a debtor and so contains a subjective dimension. Obviously, though, there is an overlap to the objective and subjective components. The more objectively clear it is that a debtor cannot reorganize, it is concomitantly more difficult to conclude that the debtor's subjective belief in its ability to reorganize is in good faith.

Previously, I had phrased the issue thusly:

When a debtor is motivated by plausible, legitimate reorganization (or liquidation) purposes and not solely or predominantly by the mere desire to prevent foreclosure or hinder creditors, bad faith is not present in a chapter 11 case.

In re Clinton Centrifuge, Inc., 72 B.R. at 905.

Generally, the facts surrounding good faith will be determined by circumstantial evidence. It is unlikely that a debtor will ever acknowledge its own bad faith; therefore, one will reach conclusions about the party's intent from the totality of the circumstances surrounding the filing of the case. See Matter of Cohoes Indus. Terminal, Inc.

The connection between good faith and a chapter 11 debtor's likely ability to reorganize is involved in all chapter 11 cases. The manner in which the issue arises, though, may differ depending upon the particular circumstances. For example, when a debtor has filed successive bankruptcy cases the issue of good faith differs somewhat depending upon the success or failure of the earlier filing.

In general, while the Code does not contain any express limitation, many courts have recognized that a debtor does not have the right to file another bankruptcy reorganization case (under chapters 11, 12, or 13) after dismissal of an earlier one, unless there has been a material change of financial circumstances which demonstrates that the second attempt would succeed after the first had failed. *Accord, e.g., Matter of Elmwood Development Co.,* 964 F.2d 508 (5th Cir.1992); *In re Chisum,* 847 F.2d 597 (9th Cir.), *cert. denied,* 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988); *In re Johnson,* 708 F.2d 865 (2d Cir.1983); *In re Oglesby,* 158 B.R. 602 (E.D.Pa.1993); *In re March,* 83 B.R. 270, 274 n. 7 (Bankr.E.D.Pa.1988).

■ When there are successive reorganization bankruptcy filings [2] without any material changes in circumstances, the second filing is viewed as in "bad faith." *E.g., Matter of Elmwood Development Co. Compare In re Barrett,* 964 F.2d 588 (6th Cir.1992) (change in circumstances made the debtor's successful reorganization extremely likely and the filing undertaken in good faith). Since the first filing has been unsuccessful, there is little reason to believe that the second will yield any different result. And, as noted earlier, a bankruptcy reorganization filing without any legitimate prospect of reorganization serves as grounds to dismiss the filing. *See, e.g., Matter of Love; In re Brown,* 951 F.2d at 572; *Matter of Cohoes Indus. Terminal, Inc.; Carolin Corp. v. Miller.*

Of course, in this contested matter, this debtor's second filing was not after an earlier, unsuccessful chapter 11 reorganization. On the contrary, the debtor's earlier case was successful—in the sense that it produced a confirmed chapter 11 plan. Nonetheless, the first mortgagee maintains that this second filing is in bad faith, in that the debtor's purpose in filing is to circumvent the terms of the earlier stipulation and confirmed plan which incorporated the terms of the stipulation. Indeed, it is clear that while the debtor earlier had agreed to permit Rosenberg to exercise his non-bankruptcy law right to foreclose if certain monthly payments were not made, the debtor, by this second filing, is seeking to cure this default in payments by the terms of another confirmed plan.

The debtor counters that there are no express restrictions in the Bankruptcy Code against serial chapter 11 filings, which is technically correct. The only express provision of the Code limiting repeat filings is found in section 109(g), and that provision applies only to individual bankruptcy cases. As this debtor is a corporation, section 109(g) is inapplicable.

Thus, a number of courts have held that the filing of a second chapter 11 case is not *per se* grounds to dismiss on the basis of bad faith. *E.g., Matter of Elmwood Development Co.,* 964 F.2d at 511; *Matter of Jartran, Inc.,* 886 F.2d 859 (7th Cir.1989); *In re Consolidated Equity Properties, Inc.,* 136 B.R. 261 (D.Nev.1991).

Nevertheless, courts have dismissed in certain circumstances—on the basis of bad faith—chapter 11 cases filed after the confirmation of a plan in an earlier chapter 11 case. Dismissal is granted because of the ultimate conclusion that the debtor is unable to reorganize in the second case. The reasoning involved in reaching that conclusion is not identical, however. The two different approaches should be addressed because the

**2.** Serial filings of a completed liquidation bankruptcy—one under chapter 7—followed by a reorganization filing—one under chapters 11 or 13—is permitted without regard to a change in circumstances. *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66

(1991). In a chapter 7, the debtor's ability to reorganize is not in issue.

Although the debtor relies upon the *Home State Bank* decision in its opposition to the instant motion, that decision did not involve multiple reorganization filings and so is inapposite.

debtor relies upon one while the movant proffers the other.

## III.

### A.

In certain respects, particularly as to the effect of confirmation under section 1141, chapter 11 differs from chapter 13. A few courts have focused upon those differences in determining whether a second chapter 11 case may be filed after the first case has had a confirmed plan—as occurred in this particular dispute.

Section 1127(b) of the Code states that a chapter 11 plan may not be modified after "substantial consummation" of the plan. Section 1101(2) defines the term "substantial consummation". Here, the debtor and Rosenberg both assert that substantial consummation had occurred, and I agree. Indeed, the debtor insists that a final decree should be entered in that earlier case.[3] Thus, the debtor in this instance no longer has the right to modify its confirmed plan. Further, by virtue of section 1141(a), the debtor is bound by the terms of the plan. *E.g., Sure–Snap Corp. v. State Street Bank and Trust Co.,* 948 F.2d 869, 873 (2d Cir. 1991).

Based upon the language of section 1127(b), some courts have held that a debtor may not file a second case under chapter 11 because any reorganization plan in the second case is, in effect, a modification of the terms of the already confirmed plan. *In re Miller,* 122 B.R. 360, 366–67 (Bankr. N.D.Iowa 1990); *In re AT of Maine, Inc.,* 56 B.R. 55 (Bankr.D.Me.1985); *In re Northampton Corp.,* 37 B.R. 110 (Bankr.E.D.Pa. 1984). In such an instance, "the debtor's present intention to reorganize and the feasibility of any such reorganization are completely irrelevant to the case at hand." *In re Northampton Corp.,* 37 B.R. at 113. Accordingly, sections 1127(b) and 1141(a) taken together render any subsequent filing in bad faith because the debtor is precluded from obtaining confirmation of another reorganization plan.

### B.

In certain instances, the Supreme Court has repeatedly instructed that the Bankruptcy Code is to be interpreted as written. *E.g., Taylor v. Freeland & Kronz,* —— U.S. ——, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992); *Connecticut National Bank v. Germain,* —— U.S. ——, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Nonetheless, a number of courts have upheld the theoretical right of a debtor to file a second chapter 11 case despite the provisions of section 1127(b).

For example, the Seventh Circuit Court of Appeals, while noting the language of section 1127(b), rendered a holding which might best be characterized as practical. It held in *Matter of Jartran, Inc.* that if a chapter 11 debtor has materially defaulted in the terms of a confirmed plan, so that conversion or dismissal of the case under section 1112(b)(8) might be warranted, the debtor may file a second chapter 11 case to propose liquidation. Because the default in the first plan will likely result in liquidation, the *Jartran* court did not believe that Congress intended that such a liquidation could only occur in the context of chapter 7, especially because the provisions regarding conversion to chapter 7 under section 1112(b) are not mandatory. The court therefore concluded that there may be valid reasons for a debtor to propose a second—liquidating—plan which would yield the same result as conversion to chapter 7, without some of the disadvantages attendant to chapter 7.

This decision cannot be construed as supporting the debtor's position in this dispute. The testimony offered in this contested matter makes clear that this second bankruptcy filing has not been done with the intent to liquidate the debtor's realty. Rather, the debtor intends again to reorganize, and in so

---

**3.** The debtor's insistence upon the entry of a final decree in the 1992 chapter 11 case stems from its fear that I would agree with decisions such as *In re Caperoads Plaza Ltd. Partnership,* 154 B.R. 614 (Bankr.D.Mass.1993) and hold that no second bankruptcy petition may be filed while an earlier one is still pending. Given my resolution of this motion and the movant's failure to raise this issue in its trial memorandum, I do not consider it.

doing avoid the provisions of its earlier stipulation with Rosenberg which were referenced by the confirmed plan. *Jartran* did not interpret the Code as permitting such action:

> Were we faced with an appeal from a confirmed liquidation plan in which Jartran effectively evaded all responsibility under the previous reorganization plan, we might have grounds for rejecting the bankruptcy court's finding [of good faith].

886 F.2d at 868.

## C.

The second approach to determining the good faith of a sequential reorganization filing, and the one preferred by the debtor, goes further than *Jartran* in not considering the application of section 1127(b) to second chapter 11 cases. Those decisions borrow the reasoning used when a second bankruptcy case is filed after dismissal of the first, and conclude that a second filing after an earlier plan confirmation is in good faith if there is a material change of circumstances which both justifies the debtor's default under the first plan and makes reorganization under a second plan likely. *E.g., Matter of Elmwood Development Co.; Matter of Mableton–Booper Associates,* 127 B.R. 941 (Bankr.N.D.Ga.1991); *In re Casa Loma Associates,* 122 B.R. 814 (Bankr.N.D.Ga.1991); *see also In re Schuldies,* 122 B.R. 100 (D.S.D. 1990) (discussing a chapter 12 reorganization after substantial consummation of a chapter 11 plan). As explained by the Fifth Circuit:

> We agree that unanticipated changed circumstances may justify a valid successive request for Chapter 11 relief. In that instance, a second position would not necessarily contradict the original proceedings because a legitimately varied and previously unknown factual scenario might require a different plan to accomplish the goals of bankruptcy relief.

*Matter of Elmwood Development Co.,* 964 F.2d at 511.

Although the debtor here contends that a material change of circumstances may justify a second chapter 11 filing after substantial consummation of a prior plan, I need not now determine whether this interpretation of the Code, or a strict interpretation of section 1127(b), is correct. Those courts supporting the debtor's interpretation have construed the concept of a material change in circumstances quite narrowly, far more narrowly than the debtor acknowledges.

## D.

■ The change of circumstances referred to by the debtor in this dispute is its misfortune in having its tenant default on its lease and its good fortune in finding another tenant (albeit a prospective tenant, since no lease agreement has been reached) who is an experienced, successful restaurant/bar operator. These events, however, do not justify the debtor's attempt to circumvent its earlier plan and agreement with its first mortgagee.

Those courts which construe that second chapter 11 filings may be in good faith, despite the terms of an earlier confirmed plan, consistently hold that the default in the first plan cannot be attributed to events caused by the debtor, events which were known at the time of confirmation, or events which are generally foreseeable. *See Matter of Elmwood Development Co.,* 964 F.2d at 512 (circumstances must be "unforeseeable"); *Matter of Mableton–Booper Associates,* 127 B.R. at 944 (circumstances must be "unanticipated"). Thus, for example, a change in market conditions for rental properties in a particular locality is not viewed as justifying a second chapter 11 filing. *See In re Casa Loma Associates,* 122 B.R. at 818. Nor is a depressed real estate market. *Matter of Elmwood Development Co.,* 964 F.2d at 512.

In the matter at bench, even if one were to consider the propriety of the second filing solely in the context of whether there has been an unforeseen material change in circumstances, the fact that a tenant operating a new restaurant/bar may not succeed is clearly a foreseeable event. Many such businesses fail; indeed, the shareholders of the debtor were twice unable to successfully operate a similar business even though they had expectations of success. Thus, I do not consider a tenant's default to be an event which justifies in this instance another bankruptcy filing. To conclude otherwise would yield the counterintuitive position that this debtor could file successive chapter 11 cases

whenever its tenant defaulted, so long as a new tenancy were likely, regardless of the terms of any prior agreements with the mortgagee and regardless of the terms of any confirmed plan in a prior case. *See In re Northampton Corp.*, 37 B.R. at 112 ("To accept such rationale would ... allow a debtor to continuously circumvent the provisions of a confirmed plan by filing chapter 11 petitions ad infinitum").

Moreover, the possibility that this debtor might default in its postpetition obligations to Mr. Rosenberg was foreseen in the parties' stipulation. Not only are there terms governing any default, but the stipulation expressly states that it would survive succeeding bankruptcy filings. Courts have repeatedly found second bankruptcy reorganization filings to be in bad faith when they represent attempts to rescind agreements made in the earlier bankruptcy filing. *Accord Matter of Elmwood Development Co.*, 964 F.2d at 513 (refusing to permit the debtor "to renege on the Elmwood I settlement"); *Weiszhaar Farms, Inc. v. Livestock State Bank,* 113 B.R. 1017, 1021 (D.S.D.1990) ("The Bankruptcy Court also found compelling the argument that the Chapter 12 filing was an attempt to avoid triggering the valid, judicially enforceable 'drop-dead' clause contained in the stipulation entered into between the parties"); *In re Miller,* 122 B.R. at 367 ("The debtors are attempting to use this Chapter 12 filing to avoid what they now perceive to be a bad deal. It is the finding of this Court that [the] filing of a successive Chapter 11 or Chapter 12 after substantial consummation of a previously confirmed Chapter 11 case for the sole purpose of renegotiating previously agreed upon plan treatment is an impermissible motive for filing the successive case").

## IV.

In its 1992 bankruptcy filing, the debtor proposed a consensual reorganization plan based upon a settlement agreement reached with its first mortgagee. That agreement and plan afforded the debtor an opportunity to cure a prepetition mortgage default and thereby avoid foreclosure, but also provided the mortgagee with certain rights if the stipulated payments were not made. Those

rights included the termination of the bankruptcy stay in that case and in any other succeeding bankruptcy case.

After failing to tender the requisite payments, the debtor here seeks to reorganize in bankruptcy again without regard to its earlier agreement. Whether one applies the provisions of section 1127(b) or the unforeseen material change of circumstances approach, such an attempt by this debtor is in bad faith within the implicit meaning of section 1112(b). Accordingly, the motion to dismiss shall be granted.

An appropriate order shall be entered.