In re IONOSPHERE CLUBS, INC., Eastern Air Lines, Inc. and Bar Harbor Airways, Inc. d/b/a Eastern Express, Debtors.

DORAL CENTER, INC. and David
J. Berger, Appellants,

v.

IONOSPHERE CLUBS, INC., Eastern Air Lines, Inc. and Bar Harbor Airways, Inc. d/b/a Eastern Express, Appellees.

Nos. 96 Civ. 6899(LAK), 89 B. 10448(BRL), 89 B. 10449(BRL), 91 B. 10287(BRL).

United States District Court,
S.D. New York.

May 29, 1997.

Lewis N. Brown, Dyanne E. Feinberg, Gilbride, Heller & Brown, P.A., John H. Genovese, Camille A. Colella, Kelley, Drye & Warren, L.L.P., for Appellants.

William E. Kelleher, Jr., Thomas D. Maxson, William J. Dunaj, Peter F. Valori, Eckert Seamans Cherin & Mellott, for Appellee Rosal, Inc.

Daniel J. King, Paul K. Ferdinands, Stefan W. Engelhardt, King & Spalding, for Appellee Eastern Air Lines, Inc.

## MEMORANDUM OPINION

KAPLAN, District Judge.

Appellants ultimately seek to purchase the Doral Computer Center ("DCC"), a commercial property located in Miami, Florida and leased by Eastern Air Lines, Inc. ("Eastern"), from whose bankruptcy this appeal emerges. They appeal from an order of the Bankruptcy Court, dated June 20, 1996, granting Eastern a limited right of first refusal to purchase the DCC. For the foregoing reasons, the order below is reversed.

### Facts

In 1971, Eastern leased the DCC from Kenscol Properties, Ltd., which later sold its interest to Rosal, Inc. ("Rosal"). (Appellants' Ex. 1, Modification of Indenture of Lease) The lease granted Eastern a right of first refusal should the owner "sell, transfer or convey any interest ... in the Leased Premises." (Id., Art. 31) Eastern, which owned parking areas around the DCC. desired the right of first refusal as a means of ensuring that the DCC and surrounding parking areas would be operated as a single project.[1] (Eastern Mem. 5) The lease could be modified or amended "by a writing signed by Lessor and Lessee ..." (Appellants' Ex. 1., Art. 32)

On March 9, 1989, Eastern filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. After years of maneuvering, a confirmation hearing was set for December 22, 1994, by which date Eastern was required to assume or reject the lease on the DCC. (Appellants' Ex. 13, at 139) Eastern desired an extension of the deadline for assumption or rejection of the lease and entered into discussions with David J. Berger, an attorney who, Eastern claims, it believed was representing Rosal. (Eastern Mem. 11) Berger hired the law firm of Strook & Strook

& Lavan to assist in the negotiations with Eastern.

Berger's role is the subject of much dispute. In addition to providing legal services to Rosal, Berger was transacting business on his own behalf. In November 1994, he purchased an option to buy the DCC for himself for the lesser of $2.75 million or $1.25 million plus the balance of the mortgage. (Appellants' Ex. 5) Berger then assigned the option to Doral Center, Inc. ("DCI"), a company he owned with his brother.[2] The parties to this suit vehemently contest the extent to which Berger was authorized to represent Rosal in the discussions, whether Rosal waived its objection to Berger's conflict in interest in acting both for Rosal and himself, and the propriety of Berger's dealings with Rosal.

Whatever Berger's precise role and its propriety, an understanding was reached at the eleventh hour. The proposed plan was modified on December 22, 1994 in two respects critical here. First, Article IX was amended to give the debtor until April 30, 1995 to decide whether to assume or reject the lease. (Appellants' Ex. 3, at 12–13) Second, the plan was amended to modify the lease "effective immediately [i.e., upon confirmation] to delete Article 31 of the lease entitled 'Right of First Refusal' and to delete any other references to the right of first refusal elsewhere contained in the Lease ..." (Id. at 14) On the same day, the Bankruptcy Court confirmed the plan. The confirmation order restated verbatim the language modifying the lease to delete the right of first refusal. (Appellants' Ex. 4, ¶ 184)

On April 28, 1995, Eastern assumed the lease. On July 14, 1995, DCI exercised its option to acquire the DCC. (Appellants' Ex. 6) Rosal, however, refused to close on the ground that Berger fraudulently had induced it to grant him the option. DCI brought suit in Florida state court for specific performance on August 25, 1995. (Id.) The suit, which was removed to the Southern District of Florida, is pending.

---

**1.** Various easements over Eastern's property were agreed upon at this time and amended on several later occasions. (See Appellants' Ex. 1, Art. 36)

**2.** The Court will refer to appellants collectively as "Berger."

On December 20, 1995, Eastern filed a motion for relief from the judgment confirming the plan in the Bankruptcy Court. It sought restoration of its right of first refusal to purchase the DCC pursuant to 11 U.S.C. § 105 and Federal Rule of Bankruptcy Procedure 9024. Eastern claimed it "had been fraudulently induced by Berger to relinquish its right of first refusal" and that this fraud should be attributed to Rosal. (Appellants' Ex. 9, at 5, 6) After some discovery, Rosal and Eastern entered into a Settlement Agreement on June 20, 1996,[3] which provided. in pertinent part, that if:

"a Final Order is entered in the Florida Litigation decreeing that the Option Agreement is a valid, binding and enforceable contract under Florida law, then Eastern shall be entitled to exercise the right of first refusal with respect to the transaction described in the Option Agreement ... The purchase price payable by Eastern to Rosal in connection with Eastern's exercise of its right of first refusal ... shall be an amount equal to the 'appraised Value' of the [DCC]." Id. at 7–8.

In the event that Rosal prevailed in the Florida litigation, Eastern's right of first refusal would not be restored.[4] (Id.) The settlement was conditioned expressly on the entry of an order determining that it was binding on Berger. (Id. ¶ 1) The motion for approval of the Settlement Agreement was opposed by Berger, and the Bankruptcy Court held an evidentiary hearing on July 11 and July 15, 1996. (Appellants' Exs. 12, 13)

During the hearing, the bankruptcy judge stated that "I don't know of any authority for the proposition that agreements amended pursuant to a Plan or Confirmation Order may not be subsequently further amended with the consent of both parties to the agreement." (Appellants' Ex. 13, at 142) He issued an order approving the Settlement Agreement on July 15, 1996. The order stated that the settlement was "in the best interests of Eastern and its creditors" and "is fair and equitable to all parties." (Appellants' Ex. 10, ¶ 4) It stated also that "the

Court expressly finds insufficient evidence to demonstrate that Berger was authorized by Rosal to amend the Lease ... in December 1994, or ... hire the law firm of Strook & Strook & Lavan to act as Rosal's counsel," and it provided specifically that the settlement is binding on Berger. (Id. ¶¶ 7, 9) This appeal followed.

### Discussion

Appellants argue that the July 15, 1996 order confirming the Settlement Agreement should be reversed on the grounds that (1) the order contravenes 11 U.S.C. §§ 1127 and 1144, and (2) the Bankruptcy Court should not have evaluated a factual dispute between the parties in approving the Settlement. Appellees contend first that appellants are not parties in interest and may not appeal. In any case, they argue, the order appealed from was correct.

### Standing

Appellees claim that appellants were and are not creditors and, accordingly, may not bring this appeal. Appellants respond that they were and are parties in interest and therefore entitled to do so.

■ Section 1109 reads: "A party in interest, including the debtor, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109. Beyond this non-exhaustive list, the term "party in interest" is not further defined in the Bankruptcy Code. In re Comcoach, 698 F.2d 571, 573 (2d Cir.1983). "The general theory behind the section is that anyone holding a direct financial stake in the outcome of the case should have an opportunity ... to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest." LAWRENCE P. KING ET AL., COLLIER ON BANKRUPTCY ¶ 1109.01 (15th ed. Rev.1997) [hereinafter COLLIER]; accord, In re Hutchinson, 5 F.3d 750, 756 (4th Cir.

---

3. The Settlement Agreement did not release any claims Eastern had against Berger.

4. The appraised value of the DCC is estimated to be between $3.5 and $4.5 million, substantially in excess of Berger's option price. (Appellants' Ex. 12, at 21)

1993). The meaning of the term "must be determined on an 'ad hoc' basis," and the categories mentioned in Section 1109 are "not meant to exclude other types of interested parties from the purview of that section." *In re Johns–Manville Corp.*, 36 B.R. 743, 748 (Bankr.S.D.N.Y.1984), *aff'd*, 52 B.R. 940 (S.D.N.Y.1985); *accord, Southern Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D.N.Y.1997) ("term 'party in interest' is broadly interpreted, but not infinitely expansive"); *see In re Ionosphere Clubs, Inc.*, 101 B.R. 844 (Bankr.S.D.N.Y.1989).[5]

■ Appellees claim that Berger had no stake in the situation that was altered by the July 15, 1996 order approving the Settlement Agreement and thus lacked standing to oppose it. The argument is absurd in light of the fact that the order purports to bind Berger. Moreover, there is no suggestion in the record that appellees challenged Berger's right to object to the settlement before the Bankruptcy Court. Indeed, they gave Berger notice of the hearing, implicitly conceding that he was a party in interest. (Appellants' Ex. 10) Furthermore, the Bankruptcy Court at least assumed that Berger was a party in interest, as it conducted a two-day hearing on July 11 and July 15, 1996, concerning Berger's objections to the Settlement Agreement and then expressly found that "the Settlement does not treat Berger or DCI unfairly or unreasonably." (Appellants' Exs. 10, 12, 13) Berger, as the holder of an option on the DCC, had a direct stake in Eastern's reorganization plan, particularly as to whether and when Eastern would assume the DCC lease and whether Eastern would give up its right of first refusal on the DCC. Hence, there is no merit to appellees' contention.

■ It is equally clear that appellants may bring this appeal. To have standing to appeal from a Bankruptcy Court's ruling, "an appellant must be a person aggrieved—a person directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." *Int'l Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir.1991); *In re Salant Corp.*, 176 B.R. 131, 133 (S.D.N.Y.1994). Unless Rosal prevails in the Florida litigation, Berger will own the DCC. Appellants are aggrieved by the order appealed from.

*Post-Consummation Plan Modification*

Section 1127, entitled "Modification of plan," states in pertinent part: "The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan ..." 11 U.S.C. § 1127(b). "Subsection 1127(b) provides the sole means for modification of the plan of reorganization after it has been confirmed." COLLIER ¶ 1127.04. Moreover, any modification "must take place before the plan is substantially consummated." *Id.* (footnote omitted).

Appellees do not dispute that Eastern's reorganization plan was substantially consummated before December 20, 1995. Rather, Eastern claims that Section 1127 does not apply here because the 1971 lease was alterable by its terms by Rosal and Eastern.[6] Appellants respond that the amendment to the lease by which Eastern surrendered its right of first refusal became part of the plan when it was included in the confirmation order and thus could be modified only in accordance with the Bankruptcy Code. Both parties rely on *In re Joint Eastern and Southern District Asbestos Litigation*, 982 F.2d 721 (2d Cir.1992).

In *Asbestos*, the Second Circuit addressed whether a court sitting in bankruptcy erred in approving a post-confirmation settlement that altered the terms of a trust established under a reorganization plan. It concluded that "the restructuring of the Trust was not permitted pursuant to any of the specific

---

5. The Second Circuit has interpreted the term "party in interest" narrowly in the specific context of the automatic stay provision, 11 U.S.C. § 362. *In re Comcoach*, 698 F.2d 571, 573 (2d Cir.1983). *Comcoach*, however, was a Chapter 7 proceeding, and Section 1109 was not considered by the *Comcoach* Court. *See In re Johns–Manville Corp.*, 31 B.R. 965, 971–72 (S.D.N.Y. 1983).

6. Rosal admits that "Section 1127 may be applicable" here, contesting primarily the standing issue discussed above. (Rosal Mem. 21)

amending powers [within the plan] ..." *Id.* at 747. After commenting that "[t]he extent to which a bankruptcy court may make changes in a confirmed reorganization plan is largely uncharted territory," the court determined that the settlement violated Section 1127. *Id.* at 747–48. In so holding, it specifically rejected the argument that "a change that would contravene section 1127(b) if made in the provisions of a plan can be accomplished by modifying the provisions of a plan-related document." *Id.* at 748.

█ To be sure, there are factual differences between *Asbestos* and this case. Here, a pre-petition contract which by its terms contemplated amendment by the parties was altered by the reorganization plan and then modified again by a post-consummation settlement between the original parties that was then approved by the Bankruptcy Court. Nevertheless, this Court comes to the same conclusion that the Second Circuit reached in *Asbestos.*

█ Permitting appellees, to modify a provision that explicitly was incorporated into a reorganization plan as occurred here [7] would permit circumvention of the bankruptcy process. When a plan is proposed, a disclosure statement must be prepared and disseminated so that all relevant constituencies are apprised of its provisions. Parties in interest register their approval or disapproval. Their positions then are considered by the Bankruptcy Court in determining whether to confirm the plan. *See In re Drexel Burnham Lambert Group, Inc.,* 138 B.R. 723, 758–59 (Bankr.S.D.N.Y.1992). Only after notice and an opportunity to be heard may the Bankruptcy Court alter the legal relationships among the debtor and its creditors and other parties in interest.

Here, Berger stood to be affected, perhaps dramatically, by the December 22, 1994 plan modification. Whether Eastern would be required to assume or reject the lease by the confirmation date was a matter of real significance to Berger, the holder of an option to buy the property subject to Eastern's lease. The modification gave Eastern an additional

four months in which to make that decision—four months in which any number of things could have altered the calculus of benefits and detriments. The extension was linked to the surrender of the right of first refusal, which was to Berger's advantage. The court below permitted Eastern to retain the benefit of the extension and potentially to recapture the principal consideration it paid for it, albeit at a higher price.

This certainly is among the vices that Section 1127(b) was designed to prevent. The fact that the lease in this case existed pre-petition and, as all other contracts, contemplated consensual modifications by the parties is of no consequence, as the surrender of the right of first refusal was an integral part of the reorganization plan and confirmation order. The July 15, 1996 order was a post-consummation modification of Eastern's reorganization plan prohibited by Section 1127.

*Revocation of Plan*

Appellees contend also that the order appealed from was authorized by 11 U.S.C. § 1144, which states:

"On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall—

"(1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and

"(2) revoke the discharge of the debtor." 11 U.S.C. § 1144.

Even assuming there was fraud, Section 1144 would not bear on the Settlement Agreement. The order appealed from did not revoke Eastern's discharge. In any event. Eastern's motion was filed more than 180 days after the order of confirmation. (Appellants' Exs. 4.7)

*General Equity Powers*

█ Nor did the Bankruptcy Court have authority to approve the Settlement Agree-

---

7. Whether those portions of the lease not amended explicitly in the plan and confirmation order could be altered post-consummation is an issue the Court need not consider.

ment under its general equity powers, as set forth in 11 U.S.C. § 105(a). "The equity power of 11 U.S.C. ¶ 105(a) cannot be used to produce a result contrary to the specific provisions of 11 U.S.C. ¶ 1127(b)." COLLIER ¶ 1127.04; *In re Stevenson*, 138 B.R. 964, 967 (Bankr.D.Idaho 1992); *see In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir.1990), *cert. denied.*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991).

### *Conclusion*

The charges against Berger, which are the subject of the Florida litigation, provide a tempting reason to allow Eastern and Rosal to cut him out of the deal. But the forum to determine those issues is the Florida litigation. If Berger acted improperly, his option, no doubt, will be set aside, and Rosal and Eastern presumably will be able to make whatever bargain they wish. But they may not do so over his objection in the guise of settling the motion before the Bankruptcy Court.

The Bankruptcy Court's approval of the Settlement Agreement violated Section 1127 and cannot be sanctioned under Sections 1144 or 105. The Bankruptcy Court's order of July 15, 1996 approving the Settlement Agreement is reversed and remanded for further proceedings consistent with this opinion.

SO ORDERED.