**In re RICKEL & ASSOCIATES, INC., Debtor.**

**No. 98 B 47203 (SMB).**

United States Bankruptcy Court, S.D. New York.

April 12, 2001.

**674**

Wolman, Babitt & King, L.L.P. (Matthew B. King, of counsel), New York City, for Debtor in Possession.

Rattet & Pasternak, LLP (Jonathan S. Pasternak, of counsel), Harrison, NY, for Official Committee of Unsecured Creditors.

Gibbons, Del Deo, Dolan, Griffinger & Vecchione (Dale E. Barney, of counsel), Newark, NJ, for Elliot J. Smith.

Kelley Drye & Warren LLP (James S. Carr, of counsel), New York City, for Reorganized Debtor.

Olshan Grundman Frome Rosenzweig & Wolosky, LLP (Andrew I. Silfen, of counsel), New York City, for Wireless Acquisition Partners LLC, Robert Frome and Michael Wainstein.

## MEMORANDUM DECISION DENYING DEBTOR'S MOTION TO MODIFY THE CONFIRMATION ORDER

STUART M. BERNSTEIN, Chief Judge.

Under the debtor's confirmed plan, the shareholders neither receive a distribution nor retain their interests. The debtor has now moved to modify the Confirmation Order to change the treatment of the equity class. The plan, however, has been substantially consummated, and relief is barred by 11 U.S.C. § 1127(b). Accordingly, the motion must be denied.

### BACKGROUND [1]

At all relevant times, the debtor was engaged in the business of providing financial advisory services and investment banking services to individual and corporate clients. By the time that it filed this liquidating chapter 11 case on October 7, 1998, it was no longer operating. As of the filing date, its assets consisted of (1) a portfolio of stocks, bonds and warrants, (2) cash and (3) claims against third parties.

### A. The Plan

The debtor filed a disclosure statement ("DS") and liquidating plan (the "Plan") on or about November 15, 1999. The Plan established six classes, three impaired and three unimpaired. (Plan §§ 3.01, 3.02.) The impaired classes included the general unsecured claims (Class 4), the subordinat-

---

1. The facts are taken primarily from the approved disclosure statement. Unless other-     wise noted, they are not in dispute.

ed note holder claims (Class 5) and the equity interests (Class 6)(*Id.,* Art. II.) The disclosure statement estimated that Class 4 and 5 claims totaled approximately $7.1 million and $11 million, respectively. (DS 22.)

The anticipated payout under the Plan essentially tracked the absolute priority rule. Thus, creditors in Class 4 would receive up to 100% of the allowed amount of their claims, plus post-petition interest at the annual rate of 9%. (Plan §§ 4.02(a), 5.01.) The Class 5 creditors, in turn, would receive a distribution only in the "unlikely event" that the classes above Class 5 received payment in full. (DS 11–12; *accord* Plan § 4.02(b).) As the estate appeared to be insolvent, Class 6, the shareholders, got nothing. (Plan 4.02(c).) In addition, they would not retain their interests in the debtor. (*Id.*) [2]

The Plan was confirmed by order dated March 7, 2000 (the "Confirmation Order"). The Confirmation Order provided, in relevant part, that the Court retained jurisdiction to modify the Plan "to the extent authorized by the Code." (Confirmation Order ¶ 15(f).) [3] Unclaimed dividends were deemed "property of the Debtor's estate," and "to the extent this estate proves to be solvent, the equity interest holders of Class 6 will be entitled to a prorated distribution." (*Id.* ¶ 16.) Finally, the property of the estate revested in the debtor. (*Id.* ¶ 3.)

## B. Sale to WAP [4]

The revested assets included certain warrants issued by SmartServ Online, Inc. ("SSOL") which the debtor had acquired years earlier. The warrants contained anti-dilution provisions based on a complex formula. In simplest terms, as SSOL issued or sold additional shares of common stock, the warrant holder acquired the right to purchase more common stock at a lower exercise price. After issuing the SSOL warrants to the debtor, SSOL engaged in transactions that triggered the anti-dilution provisions.

Prior to the confirmation hearing, the debtor had agreed to sell the SSOL warrants to American Warrant Partners LLC ("AWP") [5] for $510,000.00, subject to higher and better offers. The principal members of AWP included Gregg Smith and Elliot Smith. Both formerly worked for the debtor, and Gregg Smith served on the Committee. Gregg Smith also represented AWP in its negotiations with the debtor.

The Court conducted an auction of the warrants on March 20, 2000, two weeks after confirmation. Following competitive bidding, AWP made the highest and best bid, $3.525 million. The sale to AWP was approved by order dated March 20, 2000, and closed on April 3, 2000.

It turns out that the SSOL warrants were worth substantially more than the debtor or the Committee thought, due primarily to the anti-dilution provisions. In

---

**2.** According to the disclosure statement, equity's interests were "being terminated under the terms of the Plan." (DS 7.) Neither the Plan nor the disclosure statement, however, said when this was to occur.

**3.** The Plan, in this regard, provided that it could be modified before "substantial consummation." (Plan § 8.02.)

**4.** The description of the circumstances surrounding the sale come from the Examiner's Report, dated Feb. 2, 2001. The events are disputed, and the discussion is included to provide context to the debtor's motion. The discussion does not represent findings of fact or conclusions of law.

**5.** AWP subsequently changed its name to Wireless Acquisition Partners, LLC ("WAP").

fact, although the value of the SSOL common stock dropped significantly after the closing, WAP still managed to sell most of the warrants for $7 million, or twice what it paid. The debtor contends that Gregg Smith understood the effect of the anti-dilution provisions, and misrepresented or failed to disclose this information during his dealings on behalf of AWP with the debtor.

Based on these allegations, I appointed an Examiner. Following his investigation, he reported on several potential causes of action connected to the auction. Subsequent to the issuance of his report, the reorganized debtor, together with Robert Rickel and Marvin Numeroff, two Class 5 creditors, commenced an adversary proceeding against WAP and the Smiths. If the adversary proceeding succeeds, it may generate enough money to pay the Class 5 claims in full, and leave a surplus.

### C. This Motion

The debtor's potential solvency raised a curious dilemma: who, if anyone, would be entitled to the surplus? Under ordinary principles of corporate law as well as the absolute priority rule, the surplus would go to the shareholders. The Plan however, denied the shareholders any distributions,[6] and stripped them, at some point, of their interests.[7] Accordingly, the debtor moved on February 13, 2001, to modify the Confirmation Order, proposing only one change: amend the plan to provide that equity would receive a distribution in the event of a surplus. (*Debtor's Motion Requesting Modification of Confirmation Order,* dated Feb. 13, 2001, at ¶¶ 1, 9, 19, "WHEREFORE" clause.) The Committee, which continued in existence following

confirmation, and Kenneth Rickel, the debtor's principal shareholder, supported the motion.

Ordinarily, a motion like this would be unopposed. The debtor has to pay everyone else in full before it pays the shareholders anything. Hence, no one's ox would be gored. Nevertheless, WAP, two WAP investors (collectively "WAP"), and Elliot Smith adamantly opposed the motion. Their opposition had nothing to do with the bankruptcy case. Rather, they apparently intend to argue, as a partial defense in the adversary proceeding, that their damages should be capped at the amount needed to satisfy the Class 5 debt since the shareholders do not have any right to a distribution. They fear that the modification could adversely affect that partial defense.

### DISCUSSION

### A. WAP's Standing

Initially, the parties and the Court questioned WAP's standing to oppose the motion. On the one hand, WAP is not a creditor, has no claim to any of the debtor's assets, and has no interest affected by who receives the surplus. On the other hand, it may be significantly affected by the outcome of the motion, and therefore, according to WAP, it has the right to be heard. *See In re Balanced Plan, Inc.,* 257 B.R. 921, 923–24 (Bankr.W.D.Mo.2001)(defendants in avoidance actions have standing to oppose the trustee's substantive consolidation motion where granting the motion will increase the defendants' potential liability).

While the standing issue raises difficult questions, their resolution has no practical

---

**6.** The only exception, contained in the Confirmation Order, involved the distribution of unclaimed dividends.

**7.** The record does not reflect whether the old shares have been surrendered or canceled, or whether new shares have been issued.

effect in this proceeding. Elliot Smith has raised the same arguments in opposition to the proposed modification, and no one has challenged his standing. Moreover, the debtor's motion is being denied. Accordingly, it is unnecessary to decide whether WAP has standing, and I will proceed to the merits.

## B. Modification of Substantially Consummated Plan

■ Section 1127(b) provides the sole means for modifying a confirmed plan. *In re Ionosphere Clubs, Inc.*, 208 B.R. 812, 815 (S.D.N.Y.1997); 7 LAWRENCE P. KING, ET AL., COLLIER ON BANKRUPTCY ¶ 1127.04, at 1127–7 (15th rev. ed. 2000)("COLLIER"). It states in pertinent part:

> The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan....

■ Confirmation is the equivalent of a final judgment in a civil litigation. 7 COLLIER ¶ 1127.04[3], at 1127–9. Section 1127(b) reinforces the principle of finality by preserving the rights bought and paid for under the plan. *In re Antiquities of Nevada, Inc.*, 173 B.R. 926, 928 (9th Cir. BAP 1994); *In re U.S. Repeating Arms Co.*, 98 B.R. 138, 140 (Bankr.D.Conn.1989); *In re Charterhouse, Inc.*, 84 B.R. 147, 152 (Bankr.D.Minn.1988); *see In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir.1994); *In re Diamond Mortgage Corp.*, 105 B.R. 876, 880 (Bankr.N.D.Ill.1989) ("[c]onfirmation of a plan in effect sets the plan in stone unless the proponent chooses to alter it before it is substantially consummated").

Here, the parties agree that the plan has been substantially consummated.[8] Hence, the literal terms of § 1127(b) bar any effort to modify the Plan, as do the express terms of the Plan and the Confirmation Order.

■ It is true that the debtor has not technically proposed to disturb the Plan or modify it. Instead, it has moved to modify the Confirmation Order. The distinction, however, is irrelevant, and the result is the same. A debtor cannot circumvent § 1127(b) and change the plan simply by calling its request a motion to modify the confirmation order, *In re Charterhouse, Inc.*, 84 B.R. at 150, or a plan-related document, *Findley v. Blinken (In re Joint E. & S. Dist. Asbestos Litig.)*, 982 F.2d 721, 748 (2d Cir.1992)(statutory limitations on modifying a substantially consummated plan cannot be circumvented by modifying a plan-related document) or another application that nonetheless affects rights under the plan. *See In re United States Brass Corp.*, 255 B.R. 189, 194 (Bankr.E.D.Tex.2000)(modification of a substantially consummated plan will not be allowed regardless of the attempt to clothe the motion as a settlement or clarification of an order); *In re U.S. Repeating Arms Co.*, 98 B.R. at 140 ("Trustee may not eliminate procedural safeguards by labeling a plan modification as a claim classification"). Here, the only proposed change to the Confirmation Order involves the treatment accorded to Class 6 under the Plan. Regardless of what the debtor chooses to call it, the motion is one to modify the Plan, and is subject to § 1127(b).

8. Under § 1101(2), "substantial consummation means (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan".

### C. Proposed Exceptions to § 1127(b)

▮ The proponents of the motion nevertheless contend that I can modify the Plan pursuant to the general equitable power of the Court under § 105(a) [9] or the provisions of Fed.R.Civ.P. 60(b) [10]. Neither contention has merit. A bankruptcy court cannot exercise its equitable powers outside of the confines of the Bankruptcy Code, or disregard its specific commands. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988); *FDIC v. Colonial Realty Co.*, 966 F.2d 57, 59 (2d Cir.1992); *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir.1990), *cert. denied*, 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991). Consequently, it cannot modify a plan under § 105(a), and produce a result at odds with the specific provisions of § 1127(b). *In re Ionosphere Clubs, Inc.*, 208 B.R. at 816–17; *In re Northtown Realty Co., L.P.*, 215 B.R. 906, 912 (Bankr.E.D.N.Y.1998); *Carter v. Peoples Bank & Trust Co. (In re BNW Inc.)*, 201 B.R. 838, 847 (Bankr.S.D.Ala. 1996); *In re Stevenson*, 138 B.R. 964, 966–67 (Bankr.D.Idaho), *modified on other grounds*, 148 B.R. 592 (D.Idaho 1992); *In re Charterhouse, Inc.*, 84 B.R. at 154; 7 COLLIER ¶ 1127.04, at 1127–7.

▮ Nor can it do so under Fed. R.Civ.P. 60(b). While a court can modify a confirmation order under Rule 60(b), *see In re 401 East 89th Street Owners, Inc.*, 223 B.R. 75, 79 (Bankr.S.D.N.Y.1998); 8 COLLIER ¶ 1144.07, at 1144–13, the Rules cannot provide a remedy that the Bankruptcy Code has substantively foreclosed. *In re Fesq*, 153 F.3d 113, 116 (3d Cir.1998), *cert. denied*, 526 U.S. 1018, 119 S.Ct. 1253, 143 L.Ed.2d 350 (1999). Hence, Rule 60(b) cannot be invoked to bypass § 1127(b). *Cf. In re Newport Harbor Assocs.*, 589 F.2d 20, 23 (1st Cir.1978)(debtors cannot circumvent six month statute of limitations governing revocation of Chapter XI plan through invocation of court's general equitable powers or Fed.R.Civ.P. 60(b)).

Finally, the authorities relied on by the debtor and those supporting the motion are not persuasive. The principal authority they cited was *In re Midlands Utility, Inc.*, 251 B.R. 296 (Bankr.D.S.C.2000). There, the debtor moved after confirmation to modify an agreement fixing the amount that the debtor would pay in the future for the treatment of its sewage

---

**9.** Section 105(a) states:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

**10.** Rule 60(b) of the Federal Rules of Civil Procedure, made applicable by Rule 9024 of the Federal Rules of Bankruptcy Procedure, provides:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6) any other reason justifying relief from the operation of the judgment.

water. The agreement resolved the debtor's dispute with the local municipality, and was attached to the confirmation order. The municipality objected to the motion. It argued that the plan had been substantially consummated, and hence, the relief was barred by § 1127(b).

The court overruled the objection. Acknowledging the restrictions of § 1127(b), the court nonetheless concluded that § 1127(b) did not limit the power to grant relief from a *confirmation order* pursuant to Fed.R.Civ.P. 60(b) and Fed. R. Bankr.P. 9024. *Id.* at 300. For support, the court pointed to *Carter v. Peoples Bank & Trustee Co. (In re BNW, Inc.)*, 201 B.R. 838 (Bankr.S.D.Ala.1996) and *United States v. Bullion Hollow Enter., Inc. (In re Bullion Hollow Enter., Inc.)*, 185 B.R. 726 (W.D.Va.1995), and the apparent absence of contrary authority. *In re Midlands Utility, Inc.*, 251 B.R. at 301–02.

I decline to follow *Midlands's* lead. The dispute in that case involved a plan-related document whose effectiveness depended on confirmation. The fact that the agreement was attached to the confirmation order instead of the plan should not have changed the analysis or the result. Section 1127(b) prevented the modification.

In addition, *Midlands'* authorities are distinguishable, but in any event, unconvincing. For example, the court referred to *In re Bullion Hollow Enterprises, Inc.*, 185 B.R. 726 (W.D.Va.1995), which, in turn, quoted from *In re Savannah, Ltd.*, 162 B.R. 912 (Bankr.S.D.Ga. 1993), for the proposition that a substantially consummated plan can be modified if unforeseen circumstances subsequently arise and the debtor acts in good faith. *In re Midlands Utility*, 251 B.R. at 302. *In*

*re Savannah, Ltd.,* however, involved serial chapter 11 cases, *i.e.,* an attempt to modify a substantially consummated plan in an earlier case by filing a second case. The *Savannah* court acknowledged that no *per se* rule prevented this, but recognized that the second filing would, in effect, constitute an impermissible attempt to modify the first plan in violation of § 1127(b). 162 B.R. at 915. Accordingly, it extended § 1127(b) where the Code was otherwise silent. The second filing would be allowed only where unforeseen, changed circumstances had occurred, the changed circumstances substantially affected the ability to satisfy the terms of the earlier plan, and the second case was filed in good faith. 162 B.R. at 915–16; *accord In re Northtown Realty Co., L.P.,* 215 B.R. at 912–13; *In re Casa Loma Assocs.,* 122 B.R. 814, 818–19 (Bankr.N.D.Ga.1991).[11] The *Savannah* court concluded that the debtor had failed to satisfy the exception. Ironically, *In re Bullion Hollow Enterprises, Inc.* read the extension of § 1127(b) to a second case as a relaxation of its strict application where the modification was sought in the same case.

Next, *Midlands* cited *In re BNW* as supporting its power under Rule 60(b) to modify a confirmation order despite substantial consummation of the plan. As *Midlands* conceded, *BNW* did not expressly state that it could grant such relief under Rule 60(b), but implied as much since the *BNW* court analyzed the modification motion under the criteria of Rule 60(b). *Midlands,* 251 B.R. 301–02. Although this is a fair reading of *BNW,* it does not correctly state the law; a plan proponent cannot skirt § 1127(b) by moving to modify the confirmation order instead of the plan.

---

11. A debtor may also file a second chapter 11 case to liquidate. *Fruehauf Corp. v. Jartran, Inc. (In re Jartran, Inc.),* 886 F.2d 859, 867–69 (7th Cir.1989); *In re Northtown Realty Co., L.P.,* 215 B.R. at 912.

In the end, the *Midlands* court was persuaded by its inability to find contrary authority, and consequently, was reluctant to hold that a confirmation order can never be set aside for the purpose of modifying a substantially consummated plan. 251 B.R. at 302. This reasoning suffers from two shortcomings. First, contrary authority, discussed above, does exist. Second, it is equally true that no court has ever relied on Rule 60(b) to modify a plan after substantial consummation. *Cf. In re Joint E. & S. Dist. Asbestos Litig.*, 982 F.2d at 748 (lower court lacked basis to conclude that § 1127(b) did not bar modification of plan-related document after substantial consummation simply because no cases had been found that applied § 1127(b) to bar such modification; it was equally true that no cases had ever permitted the modification of a plan-related document without regard to § 1127(b)).

## CONCLUSION

The debtor's motion to modify the Confirmation Order is denied. Whether this prevents the reorganized debtor from prosecuting its claims against WAP is left for another day. Settle order on notice.