**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1731
_____

In re:  SC SJ HOLDINGS, LLC; FMT SJ, LLC,
Appellants

_____

On Appeal from the United States District Court for the District of Delaware
(D.C. Civ. No. 1-22-cv-00689)
District Judge: Maryellen Noreika

_____

Submitted under Third Circuit L.A.R. 34.1(a)
March 4, 2024

_____

Before: SHWARTZ, RENDELL, and AMBRO, *Circuit Judges*.

(Filed: March 28, 2024)

_____

OPINION[*]
_____

**RENDELL**, *Circuit Judge*.

Appellants are debtors whose Chapter 11 reorganization compounded, rather than

resolved, their financial difficulties.  They came to believe that this was due to erroneous

legal advice given to them by their former bankruptcy attorneys from the law firm of

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury"). Belatedly discovering this after their reorganization plan was confirmed and consummated, Appellants wished to sue Pillsbury for purported malpractice, but realized that such a suit would be barred by release provisions that they agreed to as part of their Chapter 11 plan. Faced with this legal hurdle, they requested that the Bankruptcy Court relieve them from these provisions. It rejected their request as an untimely attempt to modify or revoke the plan. The District Court affirmed. Perceiving no error in its well-reasoned opinion, we will affirm.

I.

In 2018, Appellants obtained a loan of more than $150 million to purchase the Fairmont Hotel in San Jose, CA. Under a Hotel Management Agreement ("HMA"), the hotel would be operated by Accor Management US Inc. as a Fairmont-branded property. During the COVID-19 pandemic, however, Appellants struggled to service the loan and investigated options for securing new capital and a possible restructuring of the debt. Accor refused to provide financing to Appellants and further would not permit them to obtain financing from others if such financing would depend on rebranding the hotel in violation of the HMA. Hampered by the HMA, and unable to obtain financing, Appellants retained Pillsbury for advice.

According to Appellants, Pillsbury advised them that, to unburden themselves from the HMA, they should file voluntary Chapter 11 petitions. Appellants allege that Pillsbury lawyers explained that the bankruptcy process would permit termination of the HMA, avoid arbitration, cost approximately $3.5 million in legal fees and damages, and

2

take just one hundred days to complete. Acting on this advice, Appellants filed Chapter 11 petitions. Contrary to Pillsbury's purported assurances, however, the proceedings lasted more than eight months, during which time Appellants were forced to arbitrate with Accor and were ultimately required to pay more than $20 million in damages, fees, and interest to Accor for breaching the HMA.

On August 18, 2021, the Bankruptcy Court confirmed Appellants' Chapter 11 bankruptcy plan. It contained provisions "for mutual releases among numerous parties as to any claims arising out of or related to the bankruptcy proceedings or to Debtors. Those release provisions cover Debtors' 'Related Persons,' defined to include their 'attorneys . . . and other professionals.'" *In re: SC SJ Holdings, LLC*, 2023 WL 2598842, at *2 (D. Del Mar. 22, 2023) (citation omitted). The provisions "also expressly exculpate Debtors and their 'Professionals' from claims and causes of action arising out of post-petition conduct, with the exception of claims of intentional fraud and willful misconduct." *Id.* (citation omitted). On November 8, 2021, the plan became effective and was substantially consummated.

On February 28, 2022, more than six months after the Bankruptcy Court confirmed the plan and more than three months after the plan had been substantially consummated, Appellants filed a motion in the Bankruptcy Court seeking an order to "reliev[e] [them] from certain aspects of the . . . Plan of Reorganization[.]" JA526. Appellants requested that the Court "modify[]" the release provisions of the plan to permit them to sue Pillsbury for malpractice. JA537. After reviewing the parties'

briefing and hearing oral argument, the Bankruptcy Court denied the motion. The District Court later affirmed.

## II.[1]

Appellants urge this Court to reverse the District Court and permit the modification or revocation of the plan despite their admittedly untimely motion for such relief. Alternatively, they assert that the District Court erred by not holding an evidentiary hearing before ruling on their motion. We disagree.

As the District Court correctly concluded, Appellants' failure to comply with the strictures of 11 U.S.C. §§ 1127 and 1144 is fatal to their case. Section 1127 provides that "the reorganized debtor may modify [a] plan at any time after confirmation of such plan and before substantial consummation of such plan[.]" 11 U.S.C. § 1127(b). As both the District Court and "Bankruptcy Court recognized . . . [,] § 1127(b) is 'the exclusive means by which to modify a [Chapter 11] plan.'" *In re: SC SJ Holdings*, 2023 WL 2598842, at *7 (citations omitted). Indeed, "[t]he parties do not dispute that Debtors' motion for relief was filed after the Plan had been substantially consummated." *Id*. Thus, Appellants' motion was untimely. While Appellants attempt to circumvent the requirement of § 1127 by disclaiming any intent to "modify" the plan, the District Court

---

[1] The Bankruptcy Court had jurisdiction under 11 U.S.C. § 101. *et seq*. The District Court had jurisdiction under 28 U.S.C. § 158(a). This Court has jurisdiction under 28 U.S.C. § 1291.

We review a district court's legal conclusions de novo. *In re Trans World Airlines*, 145 F.3d 124, 131 (3d Cir. 1998). We review a district court's decision on whether to hold an evidentiary hearing for abuse of discretion. *See, e.g.*, *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 246 F.3d 315, 320 (3d Cir. 2001).

4

rightly focused on the "substance rather than the form of the requested relief" in deciding that § 1127 controlled. *Id.* at *5 (citation omitted). As Appellants sought permission to sue Pillsbury for malpractice in connection with the Chapter 11 proceedings—a claim that was specifically released under the plain terms of the plan, the District Court rightly concluded that Appellants sought a "modification." *Id.*

Section 1144 is also controlling, as it limits the time in which a debtor may seek revocation of a confirmed plan. Under § 1144, "[o]n request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud." 11 U.S.C. § 1144. The District Court recognized that even if Appellants' request for relief from the release provisions did not entail "modification" of the plan, it could be considered a partial or wholesale "revocation." *In re: SC SJ Holdings*, 2023 WL 2598842, at *7. Thus, the Court rightly concluded that "[t]o the extent Debtors' motion for relief can be read as a motion for revocation of the Confirmation Order, Debtors have not complied with the strict requirements of § 1144." *Id.* Appellants failed to file their request within 180 days of confirmation.[2] **JA22.**

On appeal, Appellants rehash an argument that was rejected by the District Court, namely, that §§ 1127 and 1144 do not "provide the exclusive procedural means of relief" in this case. Appellants' Br. 25. Instead, they contend that Bankruptcy Rule of Civil

---

[2] Section 1144 would allow revocation of the plan if it was procured by fraud, but Appellants did not make that allegation.

Procedure 9024 and Federal Rule of Civil Procedure 60 permit modification or revocation of the plan independent of these two statutory provisions.[3] We disagree.

As the District Court succinctly explained, it is well established that "a rule of procedure cannot 'negate the substantive impact of [a] restriction contained' in a provision of the Bankruptcy Code or 'validly provide' a movant 'with a substantive remedy that would be foreclosed by' such a statutory provision." *In re: SC SJ Holdings*, 2023 WL 2598842, at \*6 (quoting *In re Fesq*, 153 F.3d 113, 116-17 (3d Cir. 1998)). Here, to permit Appellants to modify or revoke their plan under Rule 9024 or Rule 60 would simply "produce a result at odds with the specific provisions of" the Bankruptcy Code. *Id.* (quoting *In re Rickel & Assocs. Inc.*, 260 B.R. 673, 676 (Bankr. S.D.N.Y. 2001)) (internal quotation marks omitted).

As we agree with the District Court's legal conclusion that Appellants' request was untimely, we see no error in the District Court's decision not to grant Appellants a full evidentiary hearing. Because they could not establish entitlement to relief as a matter of law, there was no need for an evidentiary hearing, and the District Court did not abuse its discretion in denying Appellants' request for one.

### III.

For these reasons, we will affirm the District Court's order.

---

[3] These rules relate to procedures for seeking relief from a final judgment. They do not supersede the Code's provisions, and Rule 9024 specifically refers to § 1144 in any event. For the same reason, Appellants also cannot use the Rules of Professional Conduct to undermine the statute's requirements.